LEE LITIGATION GROUP, PLLC
C.K. Lee (CL 4086)
Anne Seelig (AS 3976)
148 West 24th Street, 8th Floor
New York, NY 10011
Tel.: 212-465-1188
Fax: 212-465-1181
*Attorneys for Plaintiffs, FLSA Collective Plaintiffs*
*and the Class*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

ROBERTO ANGEL, NEFTALI VASQUEZ, ELVIS
JIMENEZ, RORY KESSLER, SAMIR ZEYNALOV,
HENRY MORALES, and MORGAN SEDGLEY
*on behalf of themselves, FLSA Collective Plaintiffs*
*and the Class,*

                    Plaintiffs,

                    v.

TAO GROUP INC, JOHN DOE ENTITIES 1-100,
MARC PACKER, NOAH TEPPERBERG,
JASON STRAUSS, RICHARD WOLF,
 and YOSHI KOJIMA,

                    Defendants.

---

Case No:

**CLASS AND**
**COLLECTIVE**
**ACTION COMPLAINT**

        Plaintiffs, ROBERTO ANGEL, NEFTALI VASQUEZ, ELVIS JIMENEZ, RORY

KESSLER, SAMIR ZEYNALOV, HENRY MORALES, and MORGAN SEDGLEY

("Plaintiffs"), on behalf of themselves and others similarly situated, by and through their

undersigned attorneys, hereby files this Class and Collective Action Complaint against TAO

GROUP INC, L JOHN DOE ENTITIES 1-100 (together, the "Corporate Defendants"), MARC

PACKER, NOAH TEPPERBERG, JASON STRAUSS, RICHARD WOLF, and YOSHI KOJIMA

(together, the "Individual Defendants," and collectively with the Corporate Defendants, the

"Defendants"), and states as follows:

## INTRODUCTION

1.      Plaintiffs allege, pursuant to the Fair Labor Standards Act, as amended, 29 U.S.C. §§201 *et. seq.* ("FLSA"), that they and others similarly situated are entitled to recover from Defendants: (1) unpaid wages due to an invalid tip credit, (2) unpaid wages due to time shaving, (3) damages from improperly deducted meal credits, (4) liquidated damages, and (5) attorneys' fees and costs.

2.      Plaintiffs further allege that, pursuant to the New York Labor Law ("NYLL"), he and others similarly situated are entitled to recover from Defendants: (1) unpaid wages due to an invalid tip credit, (2) unpaid wages due to time shaving, (3) damages from improperly deducted meal credits, (4) statutory penalties, (5) liquidated damages, and (6) attorneys' fees and costs.

3.      Additionally, Plaintiff RORY KESSLER damages and other relief under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* ("Title VII"), New York Executive Law § 296 ("NYHRL"), and New York City Administrative Code § 8-107 ("NYCHRL") for creating and fostering a hostile work environment through persistent sexual harassment against Plaintiff.

4.      Plaintiff RORY KESSLER also seeks damages and other relief under the common law of the State of New York for battery, subjected to regular sexual harassment at the hands of his supervisor, Defendant YOSHI KOJIMA.

## JURISDICTION AND VENUE

5.      This Court has jurisdiction over this controversy pursuant to 29 U.S.C. §216(b), 28 U.S.C. §§1331, 1337 and 1343, and has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. §1367.

6.      Venue is proper in the Southern District pursuant to 28 U.S.C. §1391.

## PARTIES

7.      Plaintiff ROBERTO ANGEL, for all relevant time periods, was a resident of Bronx County, New York.

8.      Plaintiff NEFTALI VASQUEZ, for all relevant time periods, was a resident of Bronx County, New York.

9.      Plaintiff ELVIS JIMENEZ, for all relevant time periods, was a resident of Westchester County, New York.

10.      Plaintiff RORY KESSLER, for all relevant time periods, was a resident of Queens County, New York.

11.      Plaintiff SAMIR ZEYNALOV, for all relevant time periods, was a resident of Kings County, New York.

12.      Plaintiff HENRY MORALES, for all relevant time periods, was a resident of Queens County, New York.

13.      Plaintiff MORGAN SEDGLEY, for the relevant time periods was a resident of either New York County, New York or Hudson County, New Jersey.

14.      Defendants collectively own and operate a group of bars and restaurants at the following locations in New York State:

      a.   Tao Downtown - 92 9th Ave, New York, NY 10011

      b.   Tao Downtown Nightclub - 369 W 16th St, New York, NY 10011

      c.   Tao Uptown - 42 E 58th St, New York, NY 10022

      d.   PHD Terrace - 210 W 55th St, New York, NY 10019

      e.   PHD Lounge - 355 W 16th St, New York, NY 10011

      f.   LAVO Nightclub - 39 E 58th St, New York, NY 10022

g.  LAVO Italian Restaurant - 39 E 58th St, New York, NY 10022

h.  Marquee - 289 10th Ave, New York, NY 10001

i.  Beauty & Essex - 146 Essex St, New York, NY 10002

j.  Avenue - 116 10th Ave, New York, NY 10011

k.  Cathedrale - 112 E 11th St, New York, NY 10003

l.  Little Sister - 112 E 11th St, New York, NY 10013

m.  Bodega Negra - 355 W 16th St, New York, NY 10011

n.  Vandal - 199 Bowery, New York, NY 10002

o.  Vandal Nightclub - 199 Bowery Lower Level, New York, NY 10002

p.  The Fleur Room - 105 W 28th St, New York, NY 10001

q.  Feroce Ristorante, Caffe & Bar - 105 W 28th St, New York, NY 10001

r.  Legasea Seafood - 485 7th Ave, New York, NY 10018

s.  Magic Hour Rooftop & Bar - 485 7th Ave 18th floor, New York, NY 10018

t.  Suite Sixteen - 4 Pennsylvania Plaza, New York, NY 10001

u.  The Rickey - 210 W 55th St #1, New York, NY 10019

v.  Fishbowl - 210 W 55th St, New York, NY 10019

w.  Electric Room - 355 W 16th St, New York, NY 10011

x.  The Beach at Dream - 355 W 16th St, New York, NY 10011

y.  Alphabet Bar - 112 E 11th St, New York, NY 10003

z.  287 Gallery - 287 10th Ave, New York, NY 10001

aa.  Bar Moxy - 485 7th Ave, New York, NY 10018

bb.  The Gallery at Dream - 355 W 16th St, New York, NY 10011

(collectively, the "Restaurants").

15.    All the Restaurants belong to the TAO GROUP INC, which is owned and operated by Individual Defendants. The Restaurants are operated as a single integrated enterprise, under the common control of the Individual Defendants.  Specifically, the Restaurants are engaged in related activities, share common ownership and have a common business purpose:

a.    All the Restaurants are owned and operated by the TAO GROUP INC. Specifically, "Tao Group Hospitality is a leading restaurant and nightlife company that **<u>develops, owns and operates</u>** many of the worlds most recognized restaurant and entertainment venues under various brands including but not limited to… PHD, Bodega Negra, The Rickey, Electric Room, Fishbowl, Legasea, Magic Hour, Feroce, The Fleur Room Cathédrale, and Little Sister." *See* **Exhibit A** (emphasis added).

b.    All the Restaurants use a central marketing department.

c.    All the Restaurants receive legal advice from the General Counsel of Tao Group's corporate headquarters, who oversees legal compliance for all the Restaurants. *See* **Exhibit B** for the same terms and policies and privacy policy of all of Tao Group's Restaurants.

d.    All paychecks of Restaurant employees are issued through the payroll department of Tao Group's corporate headquarters.

e.    Prior to opening, all new Restaurants must be approved by the Individual Defendants.

f.    All the Restaurants share the same brand name with the same logo of the parent company (Tao Group Hospitality) and are marketed jointly on one (1) common

website: https://taogroup.com/ ("Website"). *See* **Exhibit C** for all the Restaurants advertised on the same Website.

g.  All the Restaurants' locations and hours of operation are exhibited when the Website-visitor clicks on each of the Restaurant links on the Website. *See* **Exhibit C** for the webpage of the Website where Restaurants' locations and hours may be accessed by clicking on the links.

h.  All the Restaurants share a common "Contact Us" webpage on the Website, where all the Restaurants share one (1) common inquiry form, through which questions can be submitted about any of the Restaurants. Additionally, all the Restaurants share a common email in receiving and addressing any inquiry: contact@taogroup.com. *See* **Exhibit D** for the "Contact Us" webpage on the Website.

i.  All the Restaurants' menus are exhibited when the Website-visitor clicks on each of the Restaurant links on the Website. *See* **Exhibit C** for the webpage of the Website where Restaurants' menus may be accessed by clicking on the links.

j.  All the Restaurants share a common look and feel of a trendy New York City bar restaurant.

k.  All the Restaurants offer their venues for private parties and events on one (1) common Website. *See* **Exhibit E** for the private events page on the Website.

l.  All the Restaurants share the same Facebook, Twitter, Instagram, and other social media accounts, using the same brand name and logo of Tao Group Hospitality. *See* **Exhibit F** for the Restaurants' Facebook, Twitter, and Instagram accounts.

m.  All the Restaurants jointly sell one (1) common gift card that is available for use at any of the Restaurants. *See* **Exhibit G** for an online form where gift cards for the Restaurants can be purchased. *See* **Exhibit H** for design of the common Tao Group Hospitality gift card that can be used at all and any of the Restaurants. *See* **Exhibit I** for frequently asked questions about the common gift card, indicating that the card is a "universal" card that can be used at any of the Tao Group Hospitality locations. **Exhibit I** also shows a common email address for gift card support: giftcardsupport@taogroup.com.

n.  Employment positions for all the Restaurants are jointly listed and may be applied for through the shared Website. *See* **Exhibit J** for the Website's link to the Careers page.

o.  All the Restaurants share a common accessibility policy, following the "Web Content Accessibility Guidelines (WCAG) 2.0 Level A and AA [which] define technical standards for website accessibility," and they all share a common email address to which accessibility questions may be asked. *See* **Exhibit K** for the Restaurants' common accessibility policy.

p.  All the Restaurants offer reservations on one (1) common Website. *See* **Exhibit L** for the reservations page on the Website.

q.  The Restaurants regularly share and exchange non-exempt employees, who are interchangeable among the Restaurants. Defendants require employees to work at Restaurant locations different from their primary place of employment on special occasions (e.g., parties or private events) when one (1) location is short-staffed.

Defendants, on occasion, transfer employees between different locations based on their own business needs.

r.  Employees were regularly required to transport items between Restaurant locations, in accordance with the directives of central management, including the Individual Defendants.

16.  Corporate Defendant TAO GROUP INC, is a domestic limited liability company organized under the laws of the State of New York with an address for service of process and a principal place of business located at 244 Fifth Avenue Suite 2315, New York, NY 10001.

17.  Corporate Defendant JOHN DOE ENTITIES 1-100, are other business entities (the number and identities of which are not presently known) of unknown citizenship affiliated with Defendants' enterprise and having their principal places of business located at 244 Fifth Avenue Suite 2315, New York, NY 10001.

18.  At all relevant times, the Corporate Defendants were and continues to be an "enterprise engaged in commerce" within the meaning of the FLSA and New York Labor Law and the Regulations thereunder.

19.  Individual Defendants, MARC PACKER, NOAH TEPPERBERG, JASON STRAUSS, and RICHARD WOLF, are the co-founders, owners and principals of each of the Corporate Defendants. Individual Defendants exercise operational control as it relates to all employees including Plaintiffs, FLSA Collective Plaintiffs and the Class.  Individual Defendants exercise the power to (and also delegates to managers and supervisors the power to) fire and hire employees, supervise and control employee work schedules and conditions of employment, and determine the rate and method of compensation of employees including those of Plaintiffs, FLSA Collective Plaintiffs and the Class. At all times, employees of the Restaurants could complain to

Individual Defendants directly regarding any of the terms of their employment, and Individual Defendants would have the authority to effect any changes to the quality and terms of employees' employment, including changing their schedule, compensation, or terminating or hiring such employees.

20.     At all relevant times, Individual Defendant YOSHI KOJIMA was a manager and supervisor of the Tao Downtown located at 92 9th Ave, New York, NY 10011, or otherwise an owner, shareholder, member, officer, director, manager, and/or supervisor of one or more of the Corporate Defendants.

21.     At all relevant times, the work performed by Plaintiffs, FLSA Collective Plaintiffs and Class members was directly essential to the business operated by Defendants.

## FLSA COLLECTIVE ACTION ALLEGATIONS

22.     Plaintiffs bring claims for relief as a collective action pursuant to FLSA Section 16(b), 29 U.S.C. § 216(b), on behalf of all current and former non-exempt employees  (including but not limited to servers, bussers, runners, bartenders, barbacks) employed by Defendants on or after the date that is six years before the filing of the Complaint in this case as defined herein ("FLSA Collective Plaintiffs").

23.     At all relevant times, Plaintiffs and other FLSA Collective Plaintiffs are and have been similarly situated, have had substantially similar job requirements and pay provisions, and are and have been subjected to Defendants' decisions, policies, plans, programs, practices, procedures, protocols, routines, and rules, all culminating in a willful failure and refusal to pay them (i) their proper wages due to application of invalid tip credit (ii) improper retention of FLSA Collective Plaintiffs tips. The claims of Plaintiffs stated herein are essentially the same as those of other FLSA Collective Plaintiffs.

24.     At all relevant times, Plaintiffs and the other FLSA Collective Plaintiffs are and have been similarly situated, have had substantially similar job requirements and pay provisions, and are and have been subjected to Defendants' decisions, policies, plans, programs, practices, procedures, protocols, routines, and rules, all culminating in a willful failure and refusal to pay them the proper wages for all hours worked due to time shaving, and for taking improper meal credits. The claims of Plaintiff stated herein are essentially the same as those of the other FLSA Collective Plaintiffs.

25.     The claims for relief are properly brought under and maintained as an opt-in collective action pursuant to § 16(b) of the FLSA, 29 U.S.C. 216(b). The FLSA Collective Plaintiffs are readily ascertainable. For purposes of notice and other purposes related to this action, their names and addresses are readily available from the Defendants. Notice can be provided to FLSA Collective Plaintiffs via first class mail to the last address known to Defendants.

## RULE 23 CLASS ALLEGATIONS – NEW YORK

26.     Plaintiffs bring claims for relief as a collective action pursuant to the Federal Rules of Civil Procedure ("F.R.C.P.") Rule 23, on behalf of all current and former non-exempt employees  (including but not limited to servers, bussers, runners, bartenders, barbacks) employed by Defendants on or after the date that is six years before the filing of the Complaint in this case as defined herein ("Class" or "Class Members").

27.     All said persons, including Plaintiffs, are referred to herein as the "Class." The Class members are readily ascertainable. The number and identity of the Class members are determinable from the records of Defendants. The hours assigned and worked, the position held, and rates of pay for each Class member are also determinable from Defendants' records. For

purposes of notice and other purposes related to this action, their names and addresses are readily available from Defendants. Notice can be provided by means permissible under F.R.C.P. 23.

28.     The proposed Class is so numerous that a joinder of all members is impracticable, and the disposition of their claims as a class will benefit the parties and the Court. Although the precise number of such persons is unknown, the facts on which the calculation of that number are presently within the sole control of Defendants, there is no doubt that there are more than forty (40) members of the Class. The Class further includes a subclass of tipped employees ("Tipped Subclass") who also number more than forty (40). Plaintiffs, ROBERTO ANGEL, NEFTALI VASQUEZ, ELVIS JIMENEZ, SAMIR ZEYNALOV, HENRY MORALES, and MORGAN SEDGLEY are members of both the Class and the Tipped Subclass.

29.     Plaintiffs' claims are typical of those claims, which could be alleged by any member of the Class, and the relief sought is typical of the relief, which would be sought by each member of the Class in separate actions. All Class members were subject to Defendants' corporate practices of (i) failing to provide wage statements per requirements of the New York Labor Law, (ii) improperly applying a meal credit, and (iii) failing to properly provide wage notices to Class members, at date of hiring and annually, per requirements of the New York Labor Law. Defendants' corporate-wide policies and practices affected all Class members similarly, and Defendants benefited from the same type of unfair and/or wrongful acts as to each Class member. Plaintiffs and other Class members sustained similar losses, injuries and damages arising from the same unlawful policies, practices and procedures.

30.     With regard to Plaintiffs ROBERTO ANGEL, NEFTALI VASQUEZ, ELVIS JIMENEZ, SAMIR ZEYNALOV, HENRY MORALES, and MORGAN SEDGLEY and the Tipped Subclass, Defendants failed to pay them the proper minimum wage and overtime because

Defendants were not entitled to claim any tip credit because they failed to meet the statutory requirements under the New York Labor Law. Plaintiff and the Tipped Subclass suffered from Defendants' failure to pay minimum wage and their proper overtime due to Defendants' invalid tip credit allowance because Defendants (i) failed to properly provide tip credit notice at hiring and annually thereafter, (ii) claimed tip credit for all hours worked despite having caused tipped employees to engage in non-tipped duties for hours exceeding 20% of the total hours worked each workweek, (iii) failed to provide proper wage statements clearly indicating tip credit allowance for each payment period, (iv) failed to accurately keep track of daily tips earned and maintain records thereof and (v) instituted a improper tip pooling scheme, retaining Class Members' tips.

31.     Defendants' company-wide policies and practices affected all Class Members similarly, and Defendants benefited from the same type of unfair and/or wrongful acts as to each Class member. Plaintiff and Class Members sustained similar losses, injuries and damages arising from the same unlawful policies, practices and procedures.

32.     Plaintiffs are able to fairly and adequately protect the interests of the Class and have no interests antagonistic to the Class. Plaintiffs are represented by attorneys who are experienced and competent in both class action litigation and employment litigation and have previously represented plaintiffs in wage and hour cases.

33.     A class action is superior to other available methods for the fair and efficient adjudication of the controversy – particularly in the context of the wage and hour litigation where individual class members lack the financial resources to vigorously prosecute a lawsuit against corporate defendants. Class action treatment will permit a large number of similarly situated persons to prosecute common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of efforts and expense that numerous individual actions engender.

Because losses, injuries and damages suffered by each of the individual Class members are small in the sense pertinent to a class action analysis, the expenses and burden of individual litigation would make it extremely difficult or impossible for the individual Class members to redress the wrongs done to them. On the other hand, important public interests will be served by addressing the matter as a class action. The adjudication of individual litigation claims would result in a great expenditure of Court and public resources; however, treating the claims as a class action would result in a significant saving of these costs. The prosecution of separate actions by individual members of the Class would create a risk of inconsistent and/or varying adjudications with respect to the individual members of the Class, establishing incompatible standards of conduct for Defendants and resulting in the impairment of class members' rights and the disposition of their interests through actions to which they were not parties. The issues in this action can be decided by means of common, class-wide proof. In addition, if appropriate, the Court can, and is empowered to, fashion methods to efficiently manage this action as a class action.

34.     Defendants and other employers throughout the state violate the New York Labor Law. Current employees are often afraid to assert their rights out of fear of direct or indirect retaliation. Former employees are fearful of bringing claims because doing so can harm their employment, future employment, and future efforts to secure employment. Class actions provide class members who are not named in the Complaint a degree of anonymity, which allows for the vindication of their rights while eliminating or reducing these risks.

35.     There are questions of law and fact common to the Class which predominate over any questions affecting only individual class members, including:

        a.   Whether Defendants employed Plaintiffs and the Class members within the meaning of the New York law;

b.  What are and were the policies, practices, programs, procedures, protocols and plans of Defendants regarding the types of work and labor for which Defendants did not pay the Class members properly;

c.  At what common rate, or rates subject to common methods of calculation, was and are Defendants required to pay the Class members for their work;

d.  Whether Defendants properly notified Plaintiffs and the Class members of their hourly rates and overtime rates;

e.  Whether Defendants paid Plaintiffs and Class members the proper wage for all hours worked;

f.  Whether Defendants properly provided notice to Plaintiffs and the Tipped Subclass that Defendants were taking a tip credit;

g.  Whether Defendants mandated an unlawful tip-pooling scheme whereby Plaintiffs and the Tipped Subclass members were required to share tips earned with non-tipped employees;

h.  Whether Defendants accurately tracked the amount of tips earned each day and maintained records thereof;

i.  Whether Defendants required Plaintiff and the Tipped Subclass members to engage in non-tipped duties exceeding 20% of each workweek;

j.  Whether Defendants took the proper amount of tip credit allowance for each payment period under the New York Labor Law;

k.  Whether Defendants provided proper wage statements informing (i) Plaintiff and the Tipped Subclass of the amount of tip credit taken for each payment period, and

(ii) all non-exempt employees of information required to be provided on wage statements under the New York Labor Law; and

l.   Whether Defendants provided proper wage notice, at date of hiring and annually thereafter, to all non-exempt employees per requirements of the New York Labor Law.

m.   Whether Defendants properly claimed a meal credit when they did not provide food and did not satisfy the meal requirements under the New York Labor Law.

<u>**STATEMENT OF FACTS**</u>

36.   Factual claims specific to each Plaintiff is attached hereto as **Exhibit M**.

37.   At all relevant times, Plaintiffs, a subclass of FLSA Collective Plaintiffs and the Tipped Subclass were paid below the minimum wage at an invalid "tip credit" minimum wage. With respect to Plaintiffs, a subclass of FLSA Collective Plaintiffs and the Tipped Subclass, Defendants were not entitled to claim any tip credit allowance under the FLSA or NYLL because Defendants (i) failed to properly provide tip credit notice in violation of the FLSA; (ii) failed to inform them that the tip credit claimed by Defendants cannot exceed the amount of tips actually received by them in violation of the FLSA; (iii) failed to inform that all tips received by them are to be retained by them except pursuant to a valid tip pooling arrangement in violation of the FLSA; (iv) failed to inform that tip credit will not apply unless they have been informed of the foregoing tip credit notice requirement in violation of the FLSA, (v) claimed tip credit for all hours worked despite having caused tipped employees to engage in non-tipped duties for hours exceeding 20% of the total hours worked each workweek in violation of the FLSA and NYLL, (vi) failed to accurately track daily tips earned or maintain records thereof, (vii) failed to properly provide tip credit notice at hiring and annually thereafter in violation of the NYLL, and (viii) failed to provide

a proper wage statement with every payment of wages informing tipped employees of the amount of tip credit deducted for each payment period, in violation of the NYLL.

38.     Plaintiffs, a subclass of FLSA Collective Plaintiffs and the Tipped Subclass were also required to engage more than 20% of their working time in non-tipped related activities, including cleaning and refilling napkin containers, sweeping and mopping the restaurant, cleaning and wiping the menus, polishing the glassware and silverware, taking out the trash, accepting and unloading deliveries. Even though Defendants required tipped employees to engage in non-tipped activities for hours exceeding 20% of the total hours worked each workweek, Defendants improperly claimed tip credit for <u>all</u> hours worked by tipped employees. Based on Plaintiffs' direct observations and conversations with other employees, the subclass of FLSA Collective Plaintiffs members similarly spent at least twenty (20%) percent of their workday performing such non-tipped activities.

39.     At all relevant times, Defendants unlawfully retained Plaintiffs gratuities by subjecting Plaintiffs to a tip pooling scheme where non-tipped and managerial employees participated and took a percentage of the pooled tips.

40.     At all relevant times, Defendants unlawfully failed to pay Plaintiffs, FLSA Collective Plaintiffs and Class members for all hours worked each workweek, due to a policy of time shaving, resulting in unpaid wages and unpaid overtime premiums for hours worked over forty (40).

41.     At all relevant times, Defendants improperly deducted a meal credit from Plaintiffs, FLSA Collective Plaintiffs and Class Members pay. However, on most days Plaintiffs, FLSA Collective Plaintiffs and Class Members were not provided with any meal, nor any time to eat a meal.

42.    At no time during the relevant time periods did Defendants provide Plaintiffs and Class Members with proper wage notices, at the beginning of employment and annually thereafter, as required by the NYLL.

43.    At no time during the relevant time periods did Defendants provide Plaintiffs and Class Members with proper wage statements as required by the NYLL. Plaintiffs received fraudulent wage statements that reflected only their scheduled hours, and not the actual hours worked.

44.    Defendants knowingly and willfully operated their business with a policy of not paying Plaintiffs, a subclass of FLSA Collective Plaintiffs and the Tipped Subclass their lawful wage for all hours worked each workweek due to an invalid tip credit, resulting in unpaid wages.

45.    Defendants knowingly and willfully operated their business with a policy of not paying Plaintiffs , FLSA Collective Plaintiffs and Class Members for all hours worked each workweek, due to a policy of time-shaving, resulting in unpaid wages and unpaid overtime premiums for hours worked over forty (40).

46.    Defendants knowingly and willfully operated their business with a policy of unlawfully retaining gratuities by subjecting Plaintiffs, a subclass of FLSA Collective Plaintiffs and the Tipped Subclass to a tip pooling scheme where non-tipped and managerial employees participated and took a percentage of the pooled tips in violation of the FLSA and NYLL.

47.    Defendants knowingly and willfully operated their business with a policy of taking an invalid meal credit from Plaintiffs, FLSA Collective Plaintiffs and Class Members.

48.    Defendants knowingly and willfully operated their business with a policy of not providing proper wage notices, at the beginning of employment and annually thereafter, pursuant to the requirements of the NYLL.

49.     Defendants knowingly and willfully operated their business with a policy of not providing proper wage statements, as required by the NYLL.

50.     Plaintiffs retained Lee Litigation Group, PLLC to represent Plaintiffs, FLSA Collective Plaintiffs and Class Members, in this litigation and have agreed to pay the firm a reasonable fee for its services.

## STATEMENT OF CLAIM

## COUNT I

## VIOLATION OF THE FAIR LABOR STANDARDS ACT ON BEHALF OF
## PLAINTIFFS AND FLSA COLLECTIVE PLAINTIFFS

51.     Plaintiffs reallege and reaver Paragraphs 1 through 50 of this Class and Collective Action Complaint as if fully set forth herein.

52.     At all relevant times, Defendants were and continue to be employers engaged in interstate commerce and/or the production of goods for commerce within the meaning of the FLSA, 29 U.S.C. §§ 206(a) and 207(a). Further, Plaintiff and FLSA Collective Plaintiffs are covered individuals within the meaning of the FLSA, 29 U.S.C. §§ 206(a) and 207(a).

53.     At all relevant times, Defendants employed Plaintiff and FLSA Collective Plaintiffs within the meaning of the FLSA.

54.     At all relevant times, each Corporate Defendant had gross annual revenues in excess of $500,000.00.

55.     Defendants had a policy and practice of refusing to pay the statutory minimum wage to Plaintiff and FLSA Collective Plaintiffs due to an invalid tip credit. Defendants willfully violated Plaintiff's and FLSA Collective Plaintiffs' rights by failing to pay them the statutory minimum wage due to an invalid tip credit.

56.     Defendants were not entitled to take any tip credits under the FLSA, because (i) they failed to properly provide notice to all tipped employees that Defendants were taking a tip credit, rendering the tip credit invalid in respect of all tipped employees; and (ii) they retained portions of service charges without giving notice to customers that management was sharing in service charges.

57.     At all relevant times, the Defendants engaged in a policy and practice of refusing to compensate Plaintiff and FLSA Collective Plaintiffs for all hours that they worked each week due to a policy of time shaving.

58.     Defendants took an improper meal credit from Plaintiffs and FLSA Collective Plaintiffs wages because on most days they were unable to take meal breaks, and because the meals provided were insufficient.

59.     Plaintiffs are in possession of certain records concerning the number of hours worked by Plaintiffs and FLSA Collective Plaintiffs and the actual compensation paid to Plaintiff and FLSA Collective Plaintiffs. Further records concerning these matters should be in the possession and custody of the Defendants. Plaintiffs intend to obtain all records by appropriate discovery proceedings to be taken promptly in this case and, if necessary, will then seek leave of Court to amend this Complaint to set forth the precise amount due.

60.     Defendants failed to properly disclose or apprise Plaintiff and FLSA Collective Plaintiffs of their rights under the FLSA.

61.     As a direct and proximate result of Defendants' willful disregard of the FLSA, Plaintiff and FLSA Collective Plaintiffs are entitled to liquidated (i.e., double) damages pursuant to the FLSA.

62.     Due to the intentional, willful and unlawful acts of Defendants, Plaintiff and FLSA Collective Plaintiffs suffered damages in an amount not presently ascertainable of unpaid wages, and an equal amount as liquidated damages.

63.     Plaintiff and FLSA Collective Plaintiffs are entitled to an award of their reasonable attorneys' fees and costs pursuant to 29 U.S.C. §216(b).

## COUNT II

## VIOLATION OF THE NEW YORK LABOR LAW ON BEHALF OF

## PLAINTIFFS AND CLASS MEMBERS

64.     Plaintiffs reallege and reaver Paragraphs 1 through 63 of this Class and Collective Action Complaint as if fully set forth herein.

65.     At all relevant times, Plaintiff and Class members were employed by the Defendants within the meaning of the New York Labor Law, §§2 and 651.

66.     Defendants willfully violated Plaintiff's and Class members' rights by failing to pay them the proper wages for all of their hours worked due to Defendants' policy of time shaving.

67.     Defendants willfully violated Plaintiff's and the Tipped Subclass members' rights by failing to pay them minimum wages in the lawful amount for hours worked. Defendants were not entitled to claim any tip credits.

68.     Defendants willfully violated Plaintiffs' and Tipped Subclass members' right by implement a policy and practice of illegally retaining gratuities.

69.     Defendants willfully violated Plaintiffs' and Class Members' rights by taking an improper meal credit from Plaintiffs and FLSA Collective Plaintiffs wages because on most days they were unable to take meal breaks, and because the meals provided were insufficient.

70.     Defendants failed to provide a proper wage and hour notice, at the date of hiring and annually, to all non-exempt employees per requirements of the New York Labor Law.

71.     Defendants failed to provide proper wage statements with correct payment as required by New York Lab. Law § 195(3).

72.     Due to the Defendants' New York Labor Law violations, Plaintiffs and Class members are entitled to recover from Defendants their unpaid wages due to invalid tip credit, time shaving and improper meal credit, reasonable attorneys' fees, liquidated damages, statutory penalties and costs and disbursements of the action, pursuant to New York Labor Law.

### COUNT III

### TITLE VII DISCRIMINATION ON BEHALF OF PLAINTIFF RORY KESSLER

73.     Plaintiff RORY KESSLER realleges and reavers Paragraphs 1 through 72 of this Class and Collective Action Complaint as if fully set forth herein.

74.     At all relevant times, Plaintiff was an employee and a qualified person within the meaning of Title VII.

75.     At all relevant times, the Corporate Defendants as a joint enterprise were and continue to be an employer within the meaning of Title VII.

76.     Pursuant to Section 703(a)(1) and (2) of Title VII, it is an unlawful employment practice for an employer "to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin," or "to limit, segregate, or classify his employees in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such individual's race, color, religion, sex, or national origin."

77. Pursuant to Section 704(a) of Title VII, it is an unlawful employment practice for an employer "to discriminate against any of his employees . . . because he has opposed[] any practice made an unlawful employment practice by this title."

78. As alleged herein, the Corporate Defendants discriminated against Plaintiff with respect to the terms, conditions, and privileges of his employment through the creation and maintenance of a hostile work environment.

79. This hostile work environment was created and fostered through pervasive and regular sexual harassment in the form of comments and behavior directed towards Plaintiff.

80. The hostile work environment was sufficiently severe and pervasive to unreasonably interfere with Plaintiff's employment and/or create an intimidating, hostile, and offensive work environment for Plaintiff.

81. Defendants were on notice of the conduct constituting the hostile work environment and took no action to resolve it. The discrimination described herein occurred with malice and reckless disregard of Plaintiff's rights.

82. As a direct and proximate result of said discrimination, Plaintiff suffered and continues to suffer actual damages in forms including specifically but without limitation loss of past and future earnings, mental anguish, and pain and suffering. Plaintiff seeks judgment in an amount to be determined at trial for these damages as well as an award of punitive damages, interest, attorney's fees, and costs, as provided for under Title VII.

## COUNT IV

## NYHRL DISCRIMINATION ON BEHALF OF PLAINTIFF RORY KESSLER

83. Plaintiff RORY KESSLER realleges and reavers Paragraphs 1 through 82 of this Class and Collective Action Complaint as if fully set forth herein.

84.     At all relevant times, Plaintiff was an employee within the meaning of the NYHRL.

85.     At all relevant times, the Corporate Defendants as a joint enterprise were and continue to be an employer within the meaning of the NYHRL.

86.     At all relevant times, the Corporate Defendants had at least four persons in their employ, and therefore the Corporate Defendants and their agents and employees were and are required to comply with the NYHRL.

87.     Section 296(1)(a) of the NYHRL prohibits employers from discriminating against an employee because of sex "in terms, conditions or privileges of employment."

88.     Section 296(6) of the NYHRL provides that it is "an unlawful discriminatory practice for any person to aid, abet, incite, compel, or coerce the doing of any of the acts forbidden under this chapter, or to attempt to do so."

89.     Section 296(7) provides that it is an unlawful discriminatory practice "to retaliate or discriminate against any person because he or she has opposed any practices forbidden under this article."

90.     Defendants violated the NYHRL by discriminating against the terms, conditions, and privileges of Plaintiff's employment through the creation and maintenance of a hostile work environment.

91.     This hostile work environment was created and fostered through pervasive and regular sexual harassment in the form of comments and behavior directed towards Plaintiff.

92.     The hostile work environment was sufficiently severe and pervasive to unreasonably interfere with Plaintiff's employment and/or create an intimidating, hostile, and offensive work environment for Plaintiff.

93.     Defendants were on notice of the conduct constituting the hostile work environment

and took no action to resolve it.  The Corporate Defendants' failure to address the hostile work environment constituted a violation of Section 296(1)(a) of the NYHRL.

94.     Defendant YOSHI KOJIMA's comments and behavior directly created and maintained the hostile work environment to which Plaintiff was submitted in violation of Section 296(6) of the NYHRL.

95.     The Individual Defendants were involved in the promotion, demotion, hiring, and firing of Plaintiff and other employees. Defendant YOSHI KOJIMA was aware of Plaintiff's complaints and took no action upon them, and terminated Plaintiff in retaliation for his complaints, in violation of Sections 296(6) and 296(7) of the NYHRL.

96.     The discrimination described herein occurred with malice and reckless disregard of Plaintiff's rights.

97.     As a direct and proximate result of said discrimination, Plaintiff suffered and continues to suffer actual damages in forms including specifically but without limitation loss of past and future earnings, mental anguish, and pain and suffering.  Plaintiff seeks judgment in an amount to be determined at trial for these damages as well as an award of punitive damages, interest, attorney's fees, and costs, as provided for under the NYHRL.

## COUNT V

## NYCHRL DISCRIMINATION ON BEHALF OF PLAINTIFF RORY KESSLER

98.     Plaintiff RORY KESSLER realleges and reavers Paragraphs 1 through 97 of this Class and Collective Action Complaint as if fully set forth herein.

99.     At all relevant times, Plaintiff was an employee within the meaning of the NYCHRL.

100.     At all relevant times, the Corporate Defendants as a joint enterprise had at least four

persons in their employ, and therefore the Corporate Defendants and their agents and employees were and are required to comply with the NYCHRL.

101.    Section 8-107(1)(a)(3) of the NYCHRL prohibits employers from discriminating against an employee because of sex "in terms, conditions or privileges of employment."

102.    Section 8-107(6) of the NYCHRL provides that it is "an unlawful discriminatory practice for any person to aid, abet, incite, compel, or coerce the doing of any of the acts forbidden under this chapter, or to attempt to do so."

103.    Section 8-107(7) of the NYCHRL provides that it is an unlawful discriminatory practice "to retaliate or discriminate in any manner against any person because such person has [] opposed any practice forbidden under this chapter."

104.    Defendants violated the NYCHRL by discriminating against the terms, conditions, and privileges of Plaintiff's employment through the creation and maintenance of a hostile work environment.

105.    This hostile work environment was created and fostered through pervasive and regular sexual harassment in the form of comments and behavior directed towards Plaintiff.

106.    The hostile work environment was sufficiently severe and pervasive to unreasonably interfere with Plaintiff's employment and/or create an intimidating, hostile, and offensive work environment for Plaintiff.

107.    Defendants were on notice of the conduct constituting the hostile work environment and took no action to resolve it. The Corporate Defendants' failure to address the hostile work environment constituted a violation of Section 8-107(1)(a)(3) of the NYCHRL.

108.    Defendant YOSHI KOJIMA's comments and behavior directly created and maintained the hostile work environment to which Plaintiff was submitted in violation of Section

8-107(6) of the NYCHRL.

109.    The Individual Defendants were involved in the promotion, demotion, hiring, and firing of Plaintiff and other employees. Defendant YOSHI KOJIMA was aware of Plaintiff's complaints and took no action upon them, and constructively terminated Plaintiff in retaliation for his complaints, in violation of Section 8-107(6) and (7) of the NYCHRL.

110.    The discrimination described herein occurred with malice and reckless disregard of Plaintiff's rights.

111.    As a direct and proximate result of said discrimination, Plaintiff suffered and continues to suffer actual damages in forms including specifically but without limitation loss of past and future earnings, mental anguish, and pain and suffering.  Plaintiff seeks judgment in an amount to be determined at trial for these damages as well as an award of punitive damages, interest, attorney's fees, and costs, as provided for under the NYCHRL.

## COUNT VI

### BATTERY ON BEHALF OF PLAINTIFF RORY KESSLER

### AGAINST DEFENDANT YOSHI KOJIMA

112.    Plaintiff RORY KESSLER realleges and reavers Paragraphs 1 through 111 of this Class and Collective Action Complaint as if fully set forth herein.

113.    As alleged herein, Defendant YOSHI KOJIMA repeatedly made physical contact with Plaintiff's body.

114.    Said contact was made intentionally and/or recklessly by Defendant YOSHI KOJIMA.

115.    Said contact was made in a harmful or offensive manner.

116.    Said contact was knowingly made without Plaintiff's consent.

117.     Said contact caused physical harm, emotional distress, and mental trauma to Plaintiff.

118.     As a direct and proximate result of said battery, Plaintiff suffered and continues to suffer actual damages in an amount to be determined at trial, plus punitive damages, interest, attorney's fees, and costs.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs on behalf of themselves, FLSA Collective Plaintiffs and Class members, respectfully request that this Court grant the following relief:

a.   A declaratory judgment that the practices complained of herein are unlawful under the FLSA and the New York Labor Law;

b.   An injunction against Defendants and their officers, agents, successors, employees, representatives and any and all persons acting in concert with them as provided by law, from engaging in each of the unlawful practices, policies and patterns set forth herein;

c.   An award of unpaid compensation due under the FLSA and NYLL due to Defendants' invalid tip credit;

d.   An award of unpaid paid compensation due under the FLSA and NYLL due to Defendants' improper retention of tips;

e.   An award of unpaid paid compensation due under the FLSA and NYLL due to Defendants' policy of retaining all tips generated from events and large parties;

f.   An award of unpaid compensation under the FLSA and NYLL due to Defendants' improper implementation of a meal credit;

g. An award of unpaid wages for all hours worked due to time-shaving due under the FLSA and NYLL;

h. An award of compensatory damages in an amount to be determined at trial, including back pay and front pay, emotional distress, pain and suffering, and other damages to be determined;

i. An award of statutory penalties as a result of Defendants' failure to comply with New York Labor Law wage notice and wage statement requirements;

j. An award of liquidated and/or punitive damages as a result of Defendants' willful failure to pay proper overtime compensation, pursuant to 29 U.S.C. § 216;

k. An award of liquidated and/or punitive damages as a result of Defendants' willful failure to pay overtime compensation, and compensation for all hours of work, pursuant to the New York Labor Law;

l. An award of punitive damages in an amount to be determined at trial pursuant to Title VII, the NYHRL, the NYCHRL, and New York common law;

m. An award of prejudgment and post judgment interest, costs and expenses of this action together with reasonable attorneys' and expert fees and statutory penalties;

n. Designation of Plaintiff as Representative of the FLSA Collective Plaintiffs;

o. Designation of this action as a class action pursuant to F.R.C.P. 23;

p. Designation of Plaintiff as Representative of Class; and

q. Such other and further relief as this Court deems just and proper.

## JURY DEMAND

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff demands trial by jury on all issues so triable as of right by jury.


Dated: July 28, 2020

Respectfully submitted,

By: _____/s/ C.K. Lee_____

LEE LITIGATION GROUP, PLLC
C.K. Lee (CL 4086)
Anne Seelig (AS 3976)
148 West 24th Street, 8th Floor
New York, NY 10011
Tel.: 212-465-1188
Fax: 212-465-1181
*Attorneys for Plaintiffs, FLSA Collective Plaintiffs and the Class*